# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FOX CABLE NETWORKS, INC., a Delaware corporation, FOX BROADCASTING COMPANY, a Delaware corporation,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**GOEN TECHNOLOGIES CORPORATION, a New Jersey corporation, WINFUEL, INCORPORATED, a New Jersey corporation,**<br><br>**Defendants.** | **MASTER FILE: 05-CV-3487 (WJM)**<br><br><br>**OPINION**<br><br>**HON. WILLIAM J. MARTINI** |

Eric Francis Gladbach
Reed Smith LLP
599 Lexington Avenue
New York, NY 10022

Kenneth J. Cesta
Edwards, Angell, Palmer & Dodge, LLP
51 John F. Kennedy Parkway
Short Hills, NJ 07078

(*Counsel for Plaintiffs*)

Brian D. Bauman
Gibbons, PC
One Gateway Center
Newark, NJ 07102

Christine A. Amalfe
Gibbons, PC
One Gateway Center
Newark, NJ 07102

Kristin Duncan Sostowski

Gibbons, PC
One Gateway Center
Newark, NJ 07102

Sharon L. Levine
Lowenstein Sandler, PC
65 Livingston Avenue
Roseland, NJ 07068

Ghillaine A. Reid
Gibbons, PC
One Gateway Center
Newark, NJ 07102

Karim George Kaspar
Lowenstein Sandler, PC
65 Livingston Avenue
Roseland, NJ 07068

Matthew Richard Savare
Lowenstein Sandler, PC
65 Livingston Avenue
Roseland, NJ 07068

(*Counsel for Defendants*)

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiffs move for summary judgment on their claims for breach of contract and

unjust enrichment.  The Court finds disputed issues of material fact regarding the

existence and terms of the alleged contract, and these findings preclude summary

judgment on Plaintiffs' contract claim.   These findings also preclude summary judgment

on Plaintiffs' unjust enrichment claim since that claim can succeed only if no contract

existed.  Accordingly, Plaintiffs' motion for summary judgment is **DENIED**.

2

I.      FACTS

This case concerns an alleged advertising contract.  Defendants—Goen

Technologies Corporation and Winfuel, Inc.—sought to advertise a nutritional

supplement that they produced and marketed, called WinFuel.  (Compl. ¶¶ 3,4, 8–10.)  To

this end, Defendants contacted Plaintiffs—Fox Cable Networks, Inc. and Fox

Broadcasting Company—to purchase advertising airtime on Fox television channels.

(Compl. ¶¶ 1, 2, 10.)  The communications that ensued between the parties were cryptic

and conflicting.  While the parties agree that these communications ultimately constituted

an enforceable contract (Compl. ¶¶ 24–28; Countercl. ¶¶ 7–10), it is difficult to ascertain

the terms or even existence of such a contract.  Accordingly, it is also difficult to ascertain

whether each party satisfactorily performed its obligations under any such contract.

A.      The Alleged Contract

In late 2004, Defendants contacted Plaintiffs to purchase airtime on Fox television

stations for advertising WinFuel.  (Compl. ¶ 8.)  During negotiations that ensued,

Defendants emphasized that they sought not only airtime for commercial ads but also

other smaller advertising features, which Defendants referred to as "added values."

(Decl. of Alex Goen ¶ 5.)  For example, Defendants wanted Plaintiffs to label WinFuel as

the official sponsor of certain sporting events.  (Goen Decl. ¶ 5.)

On December 23, 2004, Plaintiffs sent Defendants an email containing a proposal

for an agreement.  (Decl. of Guy Sousa Ex. C.)  The proposal contained terse descriptions

of proposed commercial airtime sales.  (Sousa Decl. Ex. C.)  For each proposed unit of

airtime the proposal listed several details: the date on which the ad would  run, the

television event during which the ad would run, a location, the number of ads to run

during that event, the cost per unit, the total cost, and the "Net" cost.  (Sousa Decl. Ex.

C.)  The proposal also lists "added values" such as "Presenting Sponsor Nashville," and

"Running Order in all races."  (Sousa Decl. Ex. C.)  It is difficult to ascertain precisely

what advertising services these describe.

On January 5, 2005, Defendants responded by email with an addendum to the

aforementioned proposed agreement.  (Goen Decl. ¶ 10.)  The addendum stated that

Plaintiffs "agree[] to provide" and then listed several "added values."  (Goen Decl. Ex.

C.)  For example, the addendum stated that Plaintiffs agree to "Provide best efforts to

show the WINFUEL logo on Dale Jr.'s NASCAR during any broadcast."  (Goen Decl.

Ex. C.)  The email requested Plaintiffs to "execute the document" to "shore up this entire

deal."  (Goen Decl. Ex. C.)

Plaintiffs responded in turn on January 12, 2005, with a marked-up version of the

addendum.  (Goen Decl. Ex. B ¶ 3(b).)  In the marked-up version, Plaintiffs agreed to

some—but not all—of the terms that Defendants proposed in the addendum.  (Goen Decl.

Ex. B ¶ 3(b).)

Plaintiffs also claim that two days later, on January 14, 2005, they sent Defendants

a letter to "confirm the *order* you placed on behalf of *Goen Group/WINFUEL* with FOX

Cable Sports."  (Sousa Decl. Ex. D.)  The letter contained several details about each

proposed broadcasts.  (Sousa Decl. Ex. D.)  Defendants claim that they never received

letter and that Plaintiffs actually fabricated it some time later.[1]  (Goen Decl. ¶¶ 19–26.)

Notwithstanding whether Defendants received this letter, on March 4, 2005,

Defendants sent Plaintiffs a letter guaranteeing a payment of some kind.  (Sousa Decl. Ex.

E.)  Specifically, the letter states that "WINFUEL, Incorporated guarantees payment to

Fox Cable Networks within its terms of Net 30 days of the month following broadcast."

(Sousa Decl. Ex. E.)

Based on the above communications, the parties believed and continue to believe

that they had entered into a contract.

**B.     The Parties' Performance Under the Alleged Contract**

Accordingly, Plaintiffs began broadcasting WinFuel commercials.  (Sousa Decl. ¶

7.)  Not surprisingly, however, the parties quickly disagreed about whether Plaintiff

complied with the terms of the alleged contract.

Defendants claim that Plaintiffs failed to comply with the contract in many ways.

(Goen Decl. ¶ 12.)  For example, Defendants claim that on one occasion "Plaintiffs ran

---

[1]The parties' dispute concerning the authenticity of this letter has ballooned.
Defendants attempted through discovery to examine Plaintiffs' computers to search for
records of this document's creation.  Defendants even accuse Plaintiffs of deliberately
concealing and destroying these electronic records.  This dispute, however, is ancillary
and unnecessary to the Court's disposal of this motion.  Accordingly, the Court will not
address this dispute except to note its existence.

the wrong thirty-second commercials for the wrong product."  (Goen Decl. ¶ 12.)

Defendants claim that on another occasion "Plaintiffs used the wrong logo in a size much

smaller than that called for in the agreement."  (Goen Decl. ¶ 12.)

In response, Defendants refused to pay Plaintiffs for the ads.  (Sousa Decl. ¶¶

7–14.)  By July 2005, Defendants owed Plaintiffs $3,439,090 for ads purchased.  (Sousa

Decl. ¶ 16.)

## II.    PROCEEDINGS

Upon Defendants' refusal to pay for the airtime they had allegedly purchased,

Plaintiffs sued.  Plaintiffs alleged claims for, inter alia, breach of contract and unjust

enrichment.[2]  (Compl. ¶¶ 24–35.)

Plaintiffs now move for summary judgment in their favor on their breach of

contract and unjust enrichment claims.  (Mem. of Law in Supp. of Pl.'s Mot. for Summ. J.

6–8.)

## III.    STANDARD OF REVIEW

The Court will grant summary judgment on a claim "if the pleadings, the discovery

and disclosure materials on file, and any affidavits show that there is no genuine issue as

to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(c); see Lexington Ins. Co. v. W. Pa. Hosp., 423 F.3d 318, 322 n.2 (3d Cir.

---

[2]Defendants asserted counterclaims, but these counterclaims are irrelevant to this motion.

6

2005).  In reviewing a motion for summary judgment, the Court will draw all reasonable inferences in favor of the nonmovant.  <u>Lexington</u>, 423 F.3d at 322 n.2.

## IV.    DISCUSSION

### A.      Plaintiffs' Breach of Contract Claim

Plaintiffs move the Court to grant summary judgment in their favor on their breach of contract claim.  (Mot. 6–7.)  Plaintiffs argue that there are no disputes of material fact with respect to the existence of a contract, its terms, or whether Defendants breached it.  (Mot. 6–7.)  The Court disagrees and finds that issues of material fact exist with respect to all three of these determinations.

Most importantly, issues of material fact preclude summary judgment on the most basic issue of whether a contract even existed.  A contract between two parties is a set of voluntary, mutual obligations between them proceeding from a common intention.  <u>Johnson & Johnson v. Charmley Drug Co.</u>, 95 A.2d 391, 397 (N.J. 1953).  This intention to be obligated—the contract—may arise expressly through written or spoken words, or it may arise impliedly through other conduct.  <u>Wanaque Borough Sewarage Auth. v. Twp. of W. Milford</u>, 677 A.2d 747, 752 (N.J. 1996).  The contract arises only where the parties agree on all essential terms of the contract.  <u>State v. Ernst & Young, L.L.P.</u>, 902 A.2d 338, 345 (N.J. Super. Ct. App. Div. 2006).  When the entire relationship between the parties is not deducible only from the written arrangements, the question of whether a contract exists is for the jury—not the court.  <u>Instructional Sys., Inc. v. Computer</u>

<u>Curriculum Corp.</u>, 614 A.2d 124, 136 (N.J. 1992).

Here, the relationship between Plaintiffs and Defendants is not clear from the written arrangements alone, so the question of whether an enforceable contract even exists is one for the jury—not the Court.  The written communications between the parties are cryptic, using language and terms that require reference to outside sources to determine their meaning.  For example, Plaintiffs' original proposed agreement lists as one of the many "added values" the phrase "Launch Night," without describing what this means.  (Sousa Decl. Ex. C.)  Also, it is unclear from the written agreements whether Plaintiffs and Defendants ever agreed on all essential terms of the alleged contract.  From the written agreements, it appears that they sent differing proposals back and forth until finally Defendants sent an email to Plaintiffs on March 4, 2005, stating only that "WINFUEL, Incorporated guarantees payment to Fox Cable Networks within its terms of Net 30 days of the month following broadcast."  (Sousa Decl. Ex. E.)  Even this statement is too terse to constitute a clear acceptance of Plaintiffs' proposed terms.  Accordingly, whether the parties agreed on the essential terms of the contract is unclear from the writings alone; it requires reference to the parties' other conduct.  This is a determination for the jury, <u>id.</u>, so the Court must deny summary judgment on Plaintiffs' breach of contract claim.

Even if a contract existed, issues of material fact preclude summary judgment on the terms of such a contract and whether either party breached.  When written contract

8

provisions are ambiguous or incomplete, interpretation of the contract is a task for the jury.  Driscoll Constr. Co. v. State, Dep't of Transp., 853 A.2d 270, 276 (N.J. Super. Ct. App. Div. 2004).  Here, as explained above, any contract between the parties is replete with ambiguous terms, so the Court cannot determine precisely what those terms mean. Without being able to determine what the contract requires and which terms are material, the Court cannot determine whether either party breached or whether such breach was material to the contract, excusing the other party's performance.  See Mango v. Pierce-Coombs, 851 A.2d 62, 73 (N.J. Super. Ct. App. Div. 2004) (holding that whether conduct constitutes a breach of contract and if so whether it is a material breach are ordinarily questions for a jury).  For these reasons as well, the Court must deny summary judgment on Plaintiffs' breach of contract claim.

**B.     Plaintiffs' Unjust Enrichment Claim**

Because the Court is unable to determine on summary judgment whether a contract existed, the Court is also unable to adjudicate on summary judgment Plaintiffs' unjust enrichment claim.  The theory of unjust enrichment is that the court will imply a contract, a "quasi-contract," between the parties where one does not exist but where it is equitable to do so.  See Callano v. Oakwood Park Homes Corp., 219 A.2d 332, 334 (N.J. Super. Ct. App. Div. 1966).  A claim of unjust enrichment requires the plaintiff to show both that defendant received a benefit and that retention of the benefit would be unjust.  Iliadis v. Wal-Mart Stores, Inc., 922 A.2d 710, 723 (N.J. 2007).  Courts will only imply such a

9

quasi-contract between parties if the parties have not created an actual contract.  Moser v. Milner Hotels, 78 A.2d 393, 394 (N.J. 1951) ("An implied contract cannot exist when there is an existing express contract about the identical subject.").  Here, as explained above, it is unclear whether the parties have entered a contract to govern the terms of their relationship.  Because the Court is unable to determine on summary judgment whether a contract exists, it cannot determine on summary judgment whether Plaintiffs may recover in quasi-contract.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is **DENIED**. An Order accompanies this Opinion.

                                        s/ William J. Martini
                                        William J. Martini, U.S.D.J.